**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE/OPELOUSAS DIVISION**

**JANE DOE, ET AL**                          **CIVIL ACTION NO. 6:09-cv-01565**

**VS.**                                       **JUDGE HAIK**

**VERMILION PARISH SCHOOL BOARD,**           **MAGISTRATE JUDGE HILL**
**RANDY SCHEXNAYDER, DAVID DUPUIS**
*************************************************************************

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO**
**PLAINTIFFS'MOTION FOR LEAVE TO AMEND THE COMPLAINT**

Defendants, **VERMILION PARISH SCHOOL BOARD, RANDY SCHEXNAYDER,**

**Superintendent, and DAVID DUPUIS, Principal, Rene A Rost Middle School** submit this

Memorandum in Opposition to plaintiffs' motion for leave to amend the complaint as follows:

Plaintiff,  Jane Doe, individually and on behalf of her minor children, filed a motion to

amend her complaint (1) to add additional plaintiffs, including minor Jen Doe and Jane

Washington individually and on behalf of John, James and Joe Washington; and (2) to drop

certain claims including: (a) official capacity claims against Superintendent Schexnayder and

Principal Dupuis; (b) all claims of violations of federal regulations (except those pertaining to the

Department of Education,  Department of Agriculture, Department of Homeland Security,  and

Department of Health and Human Services); (c) claims under the Equal Educational

Opportunities Act (EEOA); and (d) demands for temporary restraining order and preliminary

injunction.

Defendants DO NOT object the plaintiffs' amended complaint in so far as plaintiff(s)

wish to drop the claims listed above.  However, defendants do object to the amendments adding

new plaintiffs and claims on their behalf.

1

Defendants object to some of the new plaintiffs and their claims on two bases: (1) the claims are untimely and/or (2) the claims are not yet ripe for adjudication.   Additionally, defendants object to all plaintiffs' claims with regards to the 2011-2012 school year on the basis of mootness.

I.      **The Washington Plaintiffs' Claims for the 2009-2010 School Year are Untimely and Plaintiffs Should Not be Allowed to Amend Their Complaint to Add Such Claims**

The Washington plaintiffs' claims do not relate back to the date the original complaint was filed as the requirements of Federal Rule of Civil Procedure 15( c) have not been met.  As a result,  the Washington plaintiffs' claims for the 2009-2010 school year were asserted more than one year after the end of the 2009-2010 school year and are, thus, untimely.

Plaintiffs assert claims under the Fourteenth Amendment pursuant to § 1983; Title IX and under Title IX implementing regulations of the United States Departments of Education,  Health and Human Services, Agriculture and Homeland Security.  § 1983 does not include a statute of limitations for the type of claims asserted by the plaintiffs in this case.  Thus, under 42 U.S.C. § 1988, federal courts must adopt the most analogous limitations period provided by state law. *Board of Regents v. Tomanio*, 446 U.S. 478, 483-84, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980). Therefore, a state's personal injury statute applies to all § 1983 claims.  *Owens v. Okure*, 488 U.S. 235, 109 S. Ct. 573, 102 L. Ed. 2d 594 (1989).

Likewise, Title IX of the Education Amendments of 1972 (20 U.S.C.A. §§ 1681 et seq.) does not contain a statute of limitations; therefore, the court must determine and apply the most analogous state statute of limitations.  See e.g. *Menard Board of Trustees of Loyola Univ. of New Orleans*, 2004 WL 856641 (E.D.La. 2004).

2

In the instant case, plaintiffs'claims for damages as a result of alleged gender discrimination is, under Louisiana law, considered a tort subject to a one (1) year statute of limitations.  See e.g. *Menard, supra* which involved a sexual harassment suit under Title IX.  As the *Menard* court explained:

> The Court notes, however, that plaintiff alleges sexual harassment, and Louisiana courts apply the one-year limitations period applicable to delictual actions to sexual harassment claims. *See* LA.C.C. art. 3492; *Bustamento v. Tucker,* 607 So.2d 532, 537 (La.1992); *Weathersby v. Jacquet,* 2001-1567, 813 So.2d 1135, 1139 (La.App. 3 Cir. 4/3/02). Consequently, the Court applies a one-year limitations period here. *Cf. Boquet v. Lafourche Parish Sheriff's Office,* 2000 WL 1511179, *1 (E.D.La.) (noting that because plaintiff's claim under 42 U.S.C. § 1983 for sexual harassment "is best characterized as a tort under Louisiana law, it is governed by the one-year prescriptive period for delictual actions dictated by Louisiana Civil Code article 3492"). The question of when a cause of action accrues is a question of federal law, and the Fifth Circuit has held that in civil rights cases, a cause of action commences when the plaintiff "knows or has reason to know of the injury which is the basis for the action." *Kline v. N. Tex. State Univ.,* 782 F.2d 1229, 1232 (5th Cir.1986) (internal quotations omitted).

Here, the 2009-2010 school year ended in May of 2010, but the Washingtons did not join this litigation until July of 2011, a period of greater than one year.  Thus, the Washingtons' claims for damages and for all other relief related to the 2009-2010 school year are untimely.

Furthermore, the Washingtons' 2009-2010 claims filed in July of 2011 do not relate back to the date the original complaint was filed on September 8, 2009.

Federal Rule of Civil Procedure 15(c) governs relation back of amendments to pleadings.

It provides:

**Relation Back of Amendments.**

**(1) *When an Amendment Relates Back.*** An amendment to a pleading relates back to the date of the original pleading when:

**(A)** the law that provides the applicable statute of limitations allows relation back;

3

**(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or

**(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and

> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Though the relation back of amendments changing plaintiffs is not addressed in Rule 15(c), the advisory committee note to the Rule provides that "the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs," and courts have applied the Rule in this manner. *See e.g. Williams v. United States,* 405 F.2d 234 (5th Cir.1968); *Lemasters v. Kmart, Inc*, 712 F. Supp. 518 (E.D.La. 1989).

In *Lemasters, supra*, nearly three years after an accident, plaintiff amended the complaint to add his wife as an additional plaintiff.  The District Court found that the wife's claim did NOT relate back to the date of filing of the original timely complaint because the defendant, Kmart, had no knowledge of the wife's involvement in her husband's claim (although it did have knowledge that the wife existed and witnessed the accident.  In reaching this conclusion, the District Court (E.D. Louisiana) relied on the Fifth Circuit's reasoning in *Williams v. United States, 405 F. 2d 234 (5th Cir. 1968)* and the Western District of Louisiana's reasoning in *Pappion*[1] :

---

[1] *Pappion  v. Dow Chemical Co.,* 627 F.Supp 1576 ( W.D.La. 1986)

4

In *Williams,* the mother who had brought suit on behalf of her minor child sought leave to amend the complaint to appear as a party plaintiff in her own right for recovery for loss of services as allowed to a parent under Georgia law. The case had been pending for five years and, but for the suit on behalf of the minor plaintiff, the mother's claim would have been time-barred. The Court stated that when a new party attempts to enter the litigation, not only must the newly added claim arise out of the conduct, transaction, or occurrence set forth in the original pleading (which K-Mart concedes is met in the instant case), but also the adversary must have had fair notice that a legal claim existed in *and was in effect being asserted by,* the party belatedly brought in. This becomes of special importance in situations in which a common set of operational facts gives rise to distinct claims (or defenses) among distinct claimants (or defendants). A ready illustration is a personal injury resulting in later death with (a) the individual's claim for lifetime pain, suffering and loss of earnings, etc. (b) the survival of (a) to his personal representative and (c) the pecuniary loss sustained by the decedent's dependents because of his death. Id, at 238 (emphasis added (in original)). The court in *Williams* allowed the amendment because the complaint "clearly revealed" the existence of the minor, the minor's mother, and the assertion by her of a claim.

[The LeMasters] [p]laintiffs believe that the claims asserted by Ms. LeMasters relate back under Rule 15(c) because K-Mart was put on notice that she had a potential claim for loss of consortium minutes after the accident. Plaintiffs base this notice argument on the fact that K-Mart knew that Mr. LeMasters had a wife and that she witnessed the accident, as the accident report indicates. Plaintiffs also note that K-Mart has deposed Mrs. LeMasters, and thus is not prejudiced by the amendment.

Contrary to plaintiffs' assertions, the fact that Ms. LeMasters witnessed her husband's accident does not imply that she has a claim for loss of consortium. Similarly, the fact that K-Mart knew that Mr. LeMasters is married does not mean that it knew that his spouse has a claim for loss of consortium. Further, as recognized in *Williams* and other cases interpreting Rule 15(c), "[t]he touchstone ... is whether the defendant knew or should have known of the existence *and involvement* of the new plaintiff." *Leachman,* 694 F.2d [1301]at 1309 (D.C. 1981) (emphasis added (in original)). Applying this principle, the court in *Pappion v. Dow Chemical Co.,* 627 F.Supp 1576 ( W.D.La. 1986), refused to allow an untimely amendment adding the wrongful death and survival claims of plaintiffs' ten major children. Distinguishing *Williams,* the court stated that "defendants in the case before us had no notice that any claims of the ten major Pappion children were in any way involved in the lawsuit before the Fifth Amended Complaint which asserted their late wrongful death claims." *Id.* at 1580. Plaintiff attempts to distinguish *Pappion* because the defendants in that case did not even know of the childrens' existence. However, as stated below, the childrens' lack of involvement in the action, not the

5

defendants' lack of knowledge of their existence, was the basis for the court's ruling:

> We therefore conclude that Rule 15( c) will not allow a plaintiff to amend his or her complaint to add another prospective plaintiff, whose claim arises out of the same transaction or occurrence of the original pleading and whose claim would otherwise be time-barred, merely because the defendant had prior notice of the additional plaintiff's existence. Rather, the additional plaintiff must have in some manner already been involved in the action, so that the defendant was on notice that it was in effect already defending the action against the new plaintiff who seeks to be added by the late amendment....

The *LeMasters* court continued:

> Often, a defendant may have notice of the existence of a possible plaintiff or of a possible claim against it. When the applicable period of limitations passes, however, the purpose of the statute of limitations has been served, in that defendant no longer needs to retain evidence and witnesses that may be necessary for its defense, and can devote to more useful purposes the resources that it had been reserving for the defense of the possible claim. The policy for statutes of limitations would be circumvented if a plaintiff is allowed to amend his complaint and add a new plaintiff merely because the new plaintiff's claim arose from the same transaction or occurrence of the original claim and the defendant was aware that the new plaintiff existed.

> *Id.* at 1581-82. This application of the Rule is consistent with the advisory committee notes, which recognize "that the chief consideration of policy is that of the statute of limitations" when a change of plaintiffs is sought under Rule 15(c).

> Applying the foregoing principles to the case at bar, the Court finds that Ms. LeMaster's claim for loss of consortium does not relate back to the date her husband filed suit. Plaintiffs have offered no evidence to establish that K-Mart knew or should have known of the existence of her cause of action. Neither has Mrs. LeMasters offered any reason for her failure to assert this claim timely. *See* 3 J. Moore, Moore's Federal Practice, ¶ 15.15[4.-1], at 15-160 (plaintiff must show that his or her failure to join the new party was not due to inexcusable neglect). . . .

Likewise,  in the instant matter, while the defendants had knowledge of the Washingtons'

existence,  as they do of other students who attend Vermilion Parish Schools, defendants did not

know nor should they have known of the existence of the Washingtons' cause of action as to the

2009-2010 school year.   Furthermore, there are no allegations in the proposed amended complaint to explain why Jane Washington unreasonably delayed in joining this suit.

Thus,  for the above reasons,  the Washingtons' claims as to the 2009-2010 school year were filed more than one year after the end of that school year and, because defendants had no knowledge of the existence of the Washingtons' cause of action for that year,  such claim do not relate back to the date of the original petition.

## II.    <u>All Claims Regarding the 2011-2012 School Year are Moot</u>

All claims by any plaintiff regarding the currently pending school year (2011-2012) are moot for the reasons stated in the Motion and Memorandum to Dismiss Claims On Behalf of Jill Doe As Moot which is adopted and incorporated herein.  The same law and argument asserted in the Motion and Memorandum to dismiss Jill Doe's claims apply to the new claims asserted by and on behalf of James and Joe Washington with regards to the 2011-2012 school year.

## III.    <u>Claims for the 2012-2013 School Year and Beyond are Not Yet Ripe</u>

Claims on behalf of Jen Doe, James Washington and Joe Washington with regards to the 2012-2013 school year are not yet ripe.

> A court should dismiss a case for lack of ' ripeness" when the case is abstract or hypothetical." *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 833 F.2d 583, 586 (5th Cir.1987). "The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " *Id.* (quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). "A case is generally ripe if any remaining questions are purely legal ones; conversely, **a case is not ripe if further factual development is required.** (**e**mphasis added)

*Monk v. Huston*, 340 F. 3d 279 (5th Cir. 2003).

In their memorandum, plaintiffs concede that Jen Doe's and James and Joe Washington's claims for 2012-2013 are not yet ripe. With regards to Jen Doe, plaintiffs state: "Jane Doe and

her daughter Jen Doe will therefore have standing to seek injunctive relief beginning in 2012 and at least through the end of the 2015-2016 school year." They also claim that James and Joe Washington "will have standing" for the 2012-2013 school year. This language clearly contemplates standing in the future, but not current standing as to the 2012-2013 school year.

Additionally, there is no doubt that "further factual development" (which precludes current ripeness) as to Jen's, James' and Joe's claims for the 2012-2013 year will be required. Indeed, not only is their attendance at Rene Rost for the 2012-2013 school year speculative at present, but the re-institution of the single sex program is also highly speculative. Furthermore, these three children have clearly not yet suffered any alleged damages for the 2012-2013 school year and any such damages would, without doubt, require "further factual development."

And, even if the Vermilion Parish School Board does elect to re-institute a single-sex program in the future, the specifics of such a future program would also require "further factual development." As is clearly shown by the United States Department of Education's new regulations as well as by the No Child Left Behind Act, single gender programs may be appropriate for diversity in education and other stated purposes. Because the Department of Education's regulations set forth the criteria for single sex programs in schools, any version of a single sex program which may hypothetically be adopted by the School Board in the future would absolutely require "further factual development" which precludes a finding of ripeness as to the future claims.

As set out in defendants' memorandum in support of motion to dismiss Jill Doe's claims, there is no doubt that there will be no single sex program for the 2011-2012 school year. Nor is there any evidence that there will be such a program for the 2012-2013 school year or any other

year in the future.  And, although plaintiffs appear to rely heavily on comments from one or maybe two Vermilion Parish School Board members during a Board meeting, School Board members, acting individually, have no authority to act or to make decisions for the Board. Instead, only the Board, acting as a unit, may take official action.  Under the facts of this case, the Vermilion Parish School Board is entitled to a presumption at this time that the single sex program will not be re-instituted in the future. See *Sossaman v. Lone Star State of Texas*, 560 F. 3d 316 (5th Cir. 2009), *aff'd,* 131 S. Ct. 1651 (2011).  Here, the individual opinions of one or two Board members, in the absence of official Board action, is insufficient to overcome this presumption.

Additionally, the *Parents Involved*[2] decision of the United States Supreme Court regarding standing, is distinguishable and has never been extended to facts such as those present in the instant case.

*Parents Involved* was a case that arose from the use of <u>race</u> for student assignment and race-based classifications warrant strict scrutiny; the policy which required race be considered as a factor was mandatory rather than voluntary; and the School District expressly stated that it temporarily terminated the race-based assignment during the pendency of the litigation.

In this gender based case, strict scrutiny is not required, participation in the single sex program, as it existed for the 2010-2011 school year, was purely voluntary and the termination of the program was not due to litigation, but was a result of waning interest and insufficient numbers of participants.

Thus,  while in *Parents Involved*,  the Court looked with strict scrutiny at an involuntary race-based process which was admittedly suspended only during the pendency of the litigation,

---

[2] *Parents Involved in Community Schools v. Seattle School District*, 551 U.S. 701, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007).

the governmental actor exception to the voluntary cessation mootness exception simply did not apply because the temporary cessation of the race-based classification was  simply "mere litigation posturing" (See e.g., *Sossaman, supra*.) To the contrary, in this case, however, the School Board defendants are clearly entitled to the good faith presumption that its actions in terminating the single sex program for declining public interest was not simply a result of this litigation and, in light of this presumption, the voluntary cessation exception to mootness, which was applied in the *Involved Parents* case, does not apply in this case.

Furthermore,  since *Parents Involved* was decided four years ago,  there have been only two non-race-based school cases (both in New York) which have cited it with regards to its standing discussion.  But, neither of these two non-race based cases held that future students or students attending schools in future years had current standing to assert claims. See e.g. *Pratt v. Indian River Cent. School District,* 2011 WL 1204804 (N.D.N.Y. 2011) and *Alive v. Hauppauge School District,* 2009 WL 959658 (E.D.N.Y. 2009).

Thus, because this case is factually distinguishable from the Parents Involved case (on the standing issue) and because no courts have extended the Parents Involved standing ruling beyond the facts of that case,  Parents Involved simply does not apply here to give current standing to Jen's, James and Joe's future, non-ripe claims for the 2012-2013 school year.

## CONCLUSION

Thus,  plaintiff's motion for leave to amend the complaint to add claims for John, James and Joe Washington for the 2009-2010 year should be denied as such claims are untimely and do not relate back should be denied.  Claims by all plaintiffs for the pending 2011-2012 school year during which there will be no single sex program should not be permitted to be added to this suit.

Additionally, all claims for the 2012-2013 school year should be prohibited as such claims are not yet ripe.

Respectfully Submitted:

CALVIN "WOODY" WOODRUFF, JR. (#13666)
Attorney at Law
P.O. Box 520
Abbeville, LA.  70511-0520
Ph:      (337)898-5777
Fax:     (337)898-5781
Attorney for Defendants


LAW OFFICE OF DAWN L. MORRIS

*S/Dawn Morris*
_____
DAWN L. MORRIS (#27016)
512 Johnston Street
Lafayette, La.  70501
Ph:      337-704-2094
Fax:     337-408-3572
Attorney for  Defendants

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE/OPELOUSAS DIVISION**

**JANE DOE, as next friend to her minor**          **CIVIL ACTION NO. 6:09-cv-01565**
**Daughters, JOAN DOE and JILL DOE**

**VS.**                                            **JUDGE HAIK**

**VERMILION PARISH SCHOOL BOARD,**                 **MAGISTRATE JUDGE**
**RANDY SCHEXNAYDER, Superintendent,**
**and DAVID DUPUIS,Principal**
*************************************************************************

<u>**CERTIFICATE**</u>

I hereby certify that on this 19th day of August, 2011, a copy of the foregoing

Defendants' Memorandum in Opposition to Plaintiffs' Amended Complaint filed electronically

with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to counsel

below by operation of the Court's electronic filing system.

Amy Lynn Katz                          Ronald L. Wilson
Law Office of Amy L Katz                American Civil Liberties Union
145 Central Park West                   Foundation of LA
New York, NY 10023                      P O Box 56157
                                        New Orleans, LA 70156
                                        Counsel for Plaintiffs

Lenora M Lapidus                        Mark W Friedman
American Civil Liberties Union          Debevoise & Plimpton
125 Borad St 18th Fl                    919 3rd Ave
New York, NY 10004                      New York, NY 10022
Counsel for Plaintiffs                  Counsel for Plaintiffs
Megan K Bannigan                        Michael R Potenza
Debevoise & Plimpton                    Debevoise & Plimpton
919 3rd Ave                             919 3rd Ave
New York, NY 10022                      New York, NY 10022
Counsel for Plaintiffs                  Counsel for Plaintiffs

12

Naveen Kabir
American Civil Liberties Union Foundation
125 Borad St 18th Fl
New York, NY 10004
Counsel for Plaintiffs

Julie M. Calderon Rizzo
Debevoise & Plimpton
919 3rd Ave
New York, NY  10022
Counsel for Plaintiffs

Galen Sherwin
American Civil Liberties Union Foundation
125 Borad Street, 18th Fl
New York, NY  10004
Counsel for Plaintiff

*S/Dawn Morris*

DAWN L. MORRIS    #27016