UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
YOUTH ALIVE, CANDACE ROJAS, by and
through her next Friends Carlos and April Rojas;
DAVID DAVILA, by and through his next friends
David and Madeline Davila,

                Plaintiffs,

   -against-

HAUPPAUGE SCHOOL DISTRICT; BOARD OF
EDUCATION OF THE DISTRICT; BOARD
MEMBERS PAT LESSER, ANN MACALUSO,
STEVE BURTON, DANIEL DELUCA, EILEEN
MASS, GERI RICHTER, ROBERT SCHNEBEL;
PATRICIA SULLIVAN-KRISS, Superintendent;
DEAN SCHLANGER, Principal of Hauppauge
High School; CHRISTINE O'CONNOR, Assistant
Principal; and MICHAEL CAULIN, Assistant
Principal,

                Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-cv-1068 (NGG) (CLP)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Plaintiffs Candace Rojas and David Davila are founding members of Youth Alive, an extracurricular student Bible club at Hauppauge High School ("HHS"). Rojas, Davila, and the Youth Alive organization ("Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 and the Equal Access Act, 20 U.S.C. § 4071, et seq., against the Hauppauge School District, its Board of Education, and the above-captioned school district officials ("Defendants"), asserting that the Defendants denied them the right to organize and meet at HHS in violation of the Equal Access Act and the First and Fourteenth Amendments to the U.S. Constitution. Plaintiffs seek a permanent injunction requiring Defendants to provide Youth Alive with "official recognition and approval" and the "associated benefits," including listing on the school website, a paid advisor

1

assigned to the club, and access to a bank account for club funds, as well as declaratory relief and nominal damages.

Defendants move to dismiss the Complaint. They assert that their voluntary actions have mooted all but one claim, and that Plaintiffs' remaining claim seeking a paid advisor for Youth Alive fails to state a claim for which relief can be granted. (See Docket Entry #18, Def. Mem.)

For the reasons set forth below, Defendants' Motion is GRANTED in part and DENIED in part.

### I. Background

Plaintiff Candace Rojas ("Rojas") founded Youth Alive, originally known as the Bible Club, while attending HHS from 2005-2007. (Docket Entry #1, Compl. 3, 6.)[1] She served as club president during the 2006-2007 school year. (Id. at 3). Plaintiff David Davila ("Davila") is a student at HHS, and serves as the current president of Youth Alive. (Id.) They each profess to be adherents of the "Christian faith." (Id. at 3-4.)

Rojas first sought permission to form a Bible club at HHS from then-Assistant Principal Christine O'Connor ("Asst. Principal O'Connor") at or around the end of January 2005. (Id. at 6.) According to Plaintiffs, Asst. Principal O'Connor refused this request, replying that Rojas could not start a Bible club because "Hauppauge High School is too secular" and "because of the budget." (Id.) Asst. Principal O'Connor allegedly reiterated her refusal on at least two other occasions between January and June 2005, citing budgetary concerns. (Id.)

However, in September 2005, then-Principal Dean Schlanger ("Principal Schlanger") announced that the school would be recognizing a new student club, the Community Service Club. (Id.) Around the end of that month, Rojas again broached the subject of starting a Bible

---

[1] Reference is made to the pages of the Complaint because the paragraphs were not numbered, as required by Fed. R. Civ. P. 10(b).

club, but faced continued resistance. (Id.) Rojas eventually secured a teacher who offered to advise the proposed club on an unpaid, volunteer basis. (Id.) On or about October 21, 2005, the Hauppauge School District Board of Education (the "School Board") apparently recognized the creation of the Bible club, now known as Youth Alive, and recommended the appointment of two advisors. (Id. at 7.) When the original volunteer advisor had to resign due to scheduling conflicts, Rojas secured a replacement, but Asst. Principal O'Connor informed her that the group could not meet until the new advisor was approved by the School Board. (Id.) By October 27, 2005, HHS agreed to allow Youth Alive to meet without the School Board's approval. (Id.) Plaintiffs allege that obstacles persisted because HHS did not provide a permanent room for Youth Alive meetings until November 11, 2005. (Id.) On that date, Rojas held the organization's first official meeting. (Id.)

In the beginning of January 2006, Rojas asked Asst. Principal O'Connor to post information about Youth Alive on the HHS website. (Id.) Plaintiffs contend that this information should have been posted in October 2005, when the club was formed. (Id.) Plaintiffs allege that the information was not posted from November 2005 until February 2006. (Id.)

The following school year, 2006-2007, Rojas met with David Davila to plan the curriculum and events for Youth Alive. (Id.) However, they allege that Asst. Principal O'Connor told them that Youth Alive was required to obtain renewed Board approval for the new school year before it could meet. (Id. at 8.) Plaintiffs further contend that by September 6, 2006, the first day of school, the Board had already approved all pre-existing clubs at HHS, with the exception of Youth Alive. (Id.) Nonetheless, by October 12, 2006, Asst. Principal O'Connor

3

authorized the group to meet without additional Board approval. (Id.) Plaintiffs allege that these actions caused Youth Alive to miss five weeks of meetings. (Id.)

To facilitate the organization's ability to meet, Asst. Principal O'Connor agreed to serve as an ad hoc advisor to Youth Alive. (Id.) Plaintiffs allege that despite this offer, on one occasion Asst. Principal O'Connor did not show up as scheduled, forcing Rojas to hold the meeting in the hallway until a security guard opened the classroom and agreed to monitor the meeting. (Id.)

On November 1, 2006, Rojas and Davila attended a Board meeting in order to demand that Youth Alive be officially approved and recognized. (Id.) They allege that at this meeting, Superintendent Patricia Sullivan-Kriss ("Superintendent Sullivan-Kriss") refused to approve the organization because it was a "community club," not a "school club." (Id.) This "inaction" by the Board prohibited Youth Alive from meeting again until mid-November 2006. (Id.)

Plaintiffs assert that Defendants continued to deny benefits and privileges to Youth Alive through the 2007-2008 school year, and have never accorded Youth Alive "official approval and recognition." (Id. at 8-9.) Plaintiffs claim that this lack of official recognition delayed the formation of Youth Alive and deprived Youth Alive of club meetings, consistent meeting space, website listing alongside other clubs, a paid advisor, and access to a bank account to hold its funds. (Id. at 9.) In their Opposition to Defendants' Motion to Dismiss, Plaintiffs contend that the School District continues to violate their rights "[b]y refusing to grant Youth Alive formal approval by the school board and further refusing to assign a paid advisor for Youth Alive's meetings." (Docket Entry #19, Pl. Opp. 9.)

Defendants have submitted affidavits in support of their contention that all but one claim is moot. Defendants concede that the formation of Youth Alive was initially delayed in 2005

due to a moratorium on new extracurricular clubs that was established in response to cuts in the school budget. (Docket Entry #17, Affidavit of Christine O'Connor ("O'Connor Aff.) ¶ 2.) However, Defendants claim that they have been responsive to all concerns regarding the club's ability to function and meet since that time. (Def. Mem. 4-5.) Asst. Principal O'Connor attests that Youth Alive has met continuously since November 2005, with one interruption in September 2006 when there was some confusion as to whether Board approval was required for the club to meet in the 2006-2007 school year. (O'Connor Aff. ¶ 4.) According to Asst. Principal O'Connor, this interruption lasted one to two weeks at most. (Id.) Defendants aver that they first learned of Plaintiffs' interest in a school bank account for club funds upon the filing of this lawsuit, and similarly were unaware of any issue with respect to the website. (Id. ¶ 9.) They claim that Youth Alive was inadvertently omitted from the school website, along with other clubs, when the website was redesigned in the 2007-2008 school year. (Id. ¶ 8.) Defendants represent that they have voluntarily and promptly cured every issue raised by the Plaintiffs, with the sole exception of Plaintiffs' request for a paid advisor.

## II.      Standard of Review

Defendants move to dismiss both for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and failure to state a claim for which relief can be granted pursuant to Rule 12(b)(6).

In reviewing a motion to dismiss pursuant to Rule 12(b)(1), the court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001); see, e.g., Flores v. District of Columbia, 437 F. Supp. 2d 22, 27-29 (D.D.C. 2006) (in deciding Rule 12(b)(1) motion asserting mootness, "the plaintiff's jurisdictional averments are entitled to no presumptive weight" and the court must look at facts presented beyond the pleadings). While the facts

alleged in the complaint are taken to be true, favorable inferences will not be drawn in favor of the party asserting jurisdiction; jurisdiction must be shown affirmatively. See Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998); see also Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").

By contrast, the court considers a motion under Rule 12(b)(6) by "construing the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). In order to state a claim upon which relief can be granted, a complaint need only plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). The Twombly "plausibility" standard dictates that the complaint's "[f]actual allegations be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." Id. at 1965 (internal citation omitted); Goldstein, 516 F.3d at 56 (applying the Twombly test).

### III. Discussion

#### a. Mootness

The jurisdiction of the federal courts is limited by Article III of the Constitution to "Cases" or "Controversies." U.S. Const. Art. III.; DeFunis v. Odegaard, 416 U.S. 312 (1974) (per curiam). When "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome" of an action, the case is moot and the court lacks subject matter jurisdiction to entertain it. County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)); New York City Employees' Retirement Sys. v. Dole Food Co., 969 F.2d 1430, 1433 (2d Cir. 1992). Though it is undisputed

that the majority of alleged violations have already abated, Plaintiffs argue that the case is not moot because (1) a live controversy persists over Defendants' continued refusal to provide Youth Alive with a paid advisor and "formal approval" by the School Board; (2) Defendants' actions fall within an exception to mootness doctrine because they are "capable of repetition, yet evading review"; and (3) Plaintiffs' claims seeking nominal damages for past violations cannot be mooted by Defendants' voluntary cessation.

There is no dispute that a live controversy exists with respect to the provision of a paid advisor. Defendants do not characterize this issue as moot, but rather move to dismiss that portion of Plaintiffs' Complaint for failure to state a claim. The court additionally concludes that a live controversy may exist over Youth Alive's quest for "formal approval" by the School Board. Plaintiffs allege that "other similarly situated student groups have received 'chartering' or 'official recognition' from the School District," apparently by action of the School Board, and that Youth Alive is the only student group denied this recognition. (Pl. Opp. 10-11.) Defendants argue that this claim is merely a mirage because Youth Alive has failed to "identify what constitutes 'official recognition' or how it translates into the denial of a single benefit." (Def. Mem. 6-7.)[2] According to Defendants, at most, this claim collapses into the dispute over a paid advisor because the School Board "never 'officially approved' via resolution any student organization, but instead approved the funding for a paid advisor." (Docket Entry #20, Reply 4.) However, Defendants provide no evidence in support of this contention. Taking the Plaintiffs' allegations to be true, a sufficient controversy exists over formal approval to forestall dismissal on mootness grounds.

---

[2] The implication of Defendants' point is that the lack of official recognition fails to state a claim because Plaintiffs have shown no denial of tangible benefits. Since the parties have solely briefed the question as an issue of mootness, however, the court will treat it as such.

Plaintiffs implicitly concede that Defendants have ameliorated all other violations alleged in the Complaint. However, "voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000); accord Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1, 127 S.Ct. 2738, 2751 (2007). The party asserting voluntary cessation bears the burden of showing that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Lamar Advertising v. Town of Orchard Park, 356 F.3d 365, 375 (2d Cir. 2004). While this standard is stringent, the evidence put forth by the parties shows that the majority of Plaintiffs' claims for injunctive and declaratory relief are in fact moot. Defendants admit that their initial actions with respect to Youth Alive were "imperfect," but the record demonstrates that Defendants have reacted promptly to remedy problems facing Youth Alive. Youth Alive's ability to organize at HHS, hold club meetings, obtain meeting space, be listed on the HHS website alongside other clubs, and access a bank account to hold its funds are wholly uncontested. Defendants pose no threat to Youth Alive's exercise of these rights and benefits, now or in the future. The court is satisfied that the allegedly wrongful behavior could not reasonably be expected to recur. See City of Los Angeles v. Lyons, 449 U.S. 934, 936 (1980) (for purposes of equitable relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy . . . if unaccompanied by any continuing, present adverse effects" and if there is no "real and immediate threat of repeated injury").

Under these circumstances, Plaintiffs' claims for injunctive and declaratory relief are plainly moot unless Defendants' actions are "capable of repetition, yet evading review." "The

capable-of-repetition doctrine applies only in exceptional situations where the following two circumstances are <u>simultaneously</u> present: (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." Spencer v. Kemna, 523 U.S. 1, 17 (1998) (internal citations omitted) (emphasis added). Plaintiffs have failed to show that the alleged violations at issue in this case necessarily expire so quickly that they evade review. The Defendants' pattern of redressing complaints as they arise is not evidence of their nefarious evasion of judicial review; more accurately, it portrays the Defendants' commitment to correcting mistakes. As reviewed above, Plaintiffs have presented no reason to believe that Defendants will retract from their current position and jeopardize Youth Alive's future ability to organize at HHS, hold club meetings, obtain meeting space, be listed on the HHS website alongside other clubs, and access a bank account to hold its funds. These claims must be dismissed as moot. There is no live controversy between the parties over these issues that could warrant adjudication or prospective relief.

While the court has determined that any claims for injunctive and declaratory relief – beyond the issues of formal approval and a paid advisor – are moot, the court finds itself compelled to allow these claims to survive insofar as they seek nominal damages for the violation of substantive constitutional rights. The Supreme Court has held that "so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case." Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health, 532 U.S. 598, 608-09 (2001). Second Circuit precedent adopts a broad view of this rule, indicating that claims for nominal damages are sufficient to prevent mootness, provided that some form of damages are specifically sought in the complaint. Van Wie v. Pataki, 267 F.3d 109, 115 n.4 (2d Cir. 2001)

(noting that plaintiffs "could avoid the potential for mootness by simply expressly pleading that . . . nominal money damages are requested"); Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir. 1986) (plaintiff's constitutional claims were not moot because he could recover at least nominal damages); Coe v. Town of Blooming Grove, 567 F. Supp. 2d 543, 557 (S.D.N.Y. 2008) (claim for nominal damages will prevent mootness); but see Fox v. Bd. of Trs. of State Univ. of New York, 42 F.3d 135, 137 (2d Cir. 1994) (declining to infer a request for damages from a generic plea for relief in order "to breathe life into a moribund dispute." (internal citation omitted)). The Complaint seeks an award of "nominal damages for the violation of Plaintiffs' constitutional rights." (Compl. 16.) These claims survive, unaltered by the mootness analysis.[3]

### b. Failure to State a Claim

The parties frame their dispute over the provision of a paid advisor as a pure question of statutory interpretation. Plaintiffs argue that the Equal Access Act mandates that HSS provide a paid advisor to Youth Alive, in accordance with the benefits provided to other clubs; Defendants argue that the same law forbids the assignment of a paid advisor because it prohibits school districts from "expend[ing] public funds beyond the incidental cost of providing the space for student-initiated meetings." 20 U.S.C. § 4071(d)(3); see also 20 U.S.C. § 4071(a) (a school district receiving federal funding and maintaining a limited open forum may not "deny equal

---

[3] The court is reluctant to prolong litigation where the parties do not even profess to have adverse interests in a continuing controversy, but finds itself constrained to follow the directives of Circuit precedent. In Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248 (10th Cir. 2004), the Tenth Circuit noted the "odd" incongruity of the rule that "a complaint for nominal damages could satisfy Article III's case or controversy requirements, when a functionally identical claim for declaratory relief will not." Id. at 1257. In a separate opinion, Judge McConnell elaborated on the problem, arguing that there was no basis to treat nominal and declaratory relief differently with respect to mootness because both remedies "have only declaratory effect and do not otherwise alter the legal rights or obligations of the parties." Id. at 1265, 1267 (McConnell, J., concurring). The application of mootness doctrine to declaratory relief purports to recognize that "[i]t is not enough that a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong; the relief sought must have legal effect in determining the present and future rights and obligations of the parties." Id. at 1263. A rule allowing actions seeking nominal damages to proceed where those seeking declaratory judgment could not circumvents these principles of justiciability.

access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting . . . on the basis of the religious, political, philosophical, or other content of the speech at such meetings.").

The conflict over the application of these provisions, however, cannot be reconciled by looking to the plain meaning of the statutory text. The Supreme Court has expressly cautioned against that reliance on the act's legislative history is "hazardous at best" because "not even the sponsors of the bill knew what it meant." Bd. of Ed. Of Westside Cmty. Schs. v. Mergens, 496 U.S. 226, 238 (1990) (explaining that "[b]ecause the bill that led to the Act was extensively rewritten in a series of multilateral negotiations . . . the Committee Reports shed no light on the language actually adopted."); Pope v. East Brunswick Bd. of Educ., 12 F.3d 1244, 1249 (3d Cir. 1993) (finding that "in the wake of Mergens, the legislative history of the Equal Access Act has little if any value").

Compounding the confusion, the issue before the court is caught in the crossfire of the opposing forces of the Establishment and Free Exercise Clauses of the First Amendment. See Cutter v. Wilkinson, 544 U.S. 709, 719 (2005) (recognizing that "[w]hile the two Clauses express complementary values, they often exert conflicting pressures."); Walz v. Tax Comm'n of City of New York, 397 U.S. 664, 668-669 (1970) ("The Court has struggled to find a neutral course between the two Religion Clauses, both of which are cast in absolute terms, and either of which, if expanded to a logical extreme, would tend to clash with the other.").

Few courts have had the opportunity to interpret the Equal Access Act's prohibition on the expenditure of "public funds beyond the incidental cost of providing the space for student-initiated meetings." In Prince v. Jacoby, 303 F.3d 1074 (9th Cir. 2002), the Ninth Circuit recognized that the prohibition on public funds was a critical bulwark to prevent the legislation

from "run[ning] afoul of a long line of Establishment Clause decisions forbidding direct subsidies to religious groups." Id. at 1085 (citing Rosenberger v. Rector & Visitors of the Univ. of Va., 515 U.S. 819 (1995)). The Prince court distinguished the use of school supplies, audio-visual equipment, and school vehicles from more basic supplies "incidental" to the cost of providing space at the school for student meetings, such as chairs, lighting, or desks, concluding that "interpreting the term 'space' to include access to school supplies, AV equipment, and vehicles, would stretch the term too far." Id. at 1090. While the Prince decision is instructive, it is not dispositive of the question of a paid advisor, where it is alleged that school policy requires the presence of an advisor at all meetings of student organizations on school grounds. (See Compl. 6-8; Pl. Opp. 14 (arguing that "it is quite reasonable that if all other extracurricular groups are provided paid advisors, that the cost of the advisor is incidental to the groups' meeting."))[4]

The application of the law to the question before this court requires more factual context. The meaning of the Equal Access Act provisions contested by the parties and the rights attendant to those provisions cannot be fairly assessed in a vacuum. Specifically, discovery is necessary to understand whether school policy might make the provision of a paid advisor a cost "incident" to the use of the space. Taking Plaintiffs' allegations to be true, as the court must in evaluating a motion to dismiss, the court holds that it cannot dismiss this claim at this stage of the litigation for failure to state a claim. Defendants' Motion is DENIED.

---

[4] Defendants' citation to Sease v. School Dist. of Philadelphia, 811 F. Supp. 183 (E.D.Pa. 1983), cannot settle the question before the court either. Sease involved the application of a separate provision in the Equal Access Act, 20 U.S.C. § 4071(c)(3), which declares that no school employee may be present at religious meetings in a participatory capacity. Id. at 191-94. Plaintiffs allege that their request for a paid advisor does not seek the participation of any school employee in Youth Alive activities, but rather seeks compensation for a school employee serving a purely supervisory role over Youth Alive's student meetings.

## IV. Conclusion

Plaintiffs' claims for injunctive and declaratory relief are dismissed as moot, with the exception of the claims regarding official approval and the provision of a paid advisor. Defendants' motion to dismiss is denied with respect to these two claims and all claims for nominal damages.

SO ORDERED.

Dated: Brooklyn, New York
March 31, 2009

s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge