IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
AT LAFAYETTE

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x
:
:                    Civil Action No:  09-CV-1565
:
JANE DOE, as next friend to her minor                       :
:
daughters, JOAN DOE and JILL DOE,                           :
:                           ECF Case
                                Plaintiffs,                 :
:
                        v.                                  :          Hon. C. Michael Hill
:
VERMILION PARISH SCHOOL BOARD,                              :
RANDY SCHEXNAYDER, Superintendent,                          :
BILL SEARLE, District A, ANGELA FAULK,                      :
District B, DEXTER CALLAHAN, District C, RICKY              :
LEBOUEF, District D, ANTHONY FONTANA,                       :
District E, CHARLES CAMPBELL, District F, CHRIS             :
MAYARD, District G, RICKY BROUSSARD, District H,            :
and DAVID DUPUIS, Principal, Rene A. Rost Middle            :
School,                                                     :
:
:
                                Defendants.                 :
:
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

I.      STATEMENT OF FACTS ........................................................................................2

II.     STANDARD OF REVIEW ......................................................................................6

III.    ARGUMENT ...........................................................................................................7

      A.      Plaintiffs' Claims are Not Moot Because They Have Live Damages
              Claims, and Because They Seek to Amend The Complaint to Add
              Plaintiffs Who Have Standing to Seek Injunctive Relief ...........................7

      B.      Defendants' Voluntary Cessation of the Single-Sex Classes for the 2011-
              2012 School Year Does Not Render the Case Moot .................................10

IV.     CONCLUSION ......................................................................................................17

## **TABLE OF AUTHORITIES**

CASES

*Barrera-Montenegro v. United States*, 74 F.3d 657 (5th Cir. 1996) ................................7

*Benton v. United States*, 960 F.2d 19 (5th Cir. 1992).......................................................6

*City of Mesquite v. Aladdin's Castle*, 455 U.S. 283 (1982)...........................................14

*Davis v. Bayless*, 70 F.3d 367 (5th Cir. 1995) .............................................................3, 7

*DeMoss v. Crain*, 636 F.3d 145 (5th Cir. 2011) ...........................................................16

*Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420 (5th Cir. 2001)........................7

*Diggs v. Hous. Auth. Of Frederick*, 67 F. Supp. 2d 522 (D. Md. 1999).......................................10

*Doe ex rel. Doe v. Vermilion Parish Sch. Bd.*, 2011 WL 1290793 (5th Cir. Apr. 6, 2011) ...............................................................................................1, 2, 10

*Dooley v. Principi*, 250 Fed. Appx. 114 (5th Cir. 2007) ..................................................6

*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333 (5th Cir. 2008) ....................................6

*Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278 (5th Cir. 2006) .....................7

*Gonzalez v. Kay,* 577 F.3d 600 (5th Cir. 2009) ..............................................................6

*Hall v. Bd. of Sch. Comm'rs of Conecuh Cnty.*, 656 F.2d 999 (5th Cir. 1981) ............................11

*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006 (5th Cir. 1998) ....................................................................................................6

*K.P. v. LeBlanc*, 627 F.3d 115 (5th Cir. 2010) ........................................................11, 14

*Lee v. Weisman*, 505 U.S. 577 (1992) .............................................................................9

*Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275 (5th Cir. 2001) ..............................9

*Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228 (5th Cir. 2009).......................................6

*Parents Involved in Comm. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701 (2007) ...........10, 11, 14

*Pederson v. La. State Univ.*, 213 F.3d 858 (5th Cir. 2000)..........................8, 10, 11, 15

*Powell v. McCormack*, 395 U.S. 486 (1969) ...............................................................................8

*Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*,
    980 F.2d 1043 (5th Cir. 1993) ...................................................................................10

*Sossamon v. Texas*, 560 F.3d 316 (5th Cir. 2009) ..........................................................12, 15, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ...................................................7

*Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559 (5th Cir. 2005) .........................................6

*Troiano v. Supervisor of Elections*, 382 F.3d 1276 (11th Cir. 2004) .......................................12, 16

*Walsh v. La. High Sch. Athletic Assoc.*, 616 F.2d 152 (5th Cir. 1980) ...........................................10

*Zepeda v. Boerne Ind. Sch. Dist.*, 294 Fed. Appx. 834 (5th Cir. 2008)..........................................16

**OTHER AUTHORITIES**

Rule 12(b)(1)...................................................................................................................6

Rule 12(b)(6)...................................................................................................................6

Plaintiff Jane Doe, as next friend to her minor daughters Joan Doe and Jill Doe ("Plaintiffs"), submits this Memorandum of Law in Opposition to Defendants' Motion to Dismiss, dated July 21, 2011 ("Defs.' Mot. to Dismiss").

Defendants concede that Plaintiffs have a live claim for damages that survives their graduation, but nonetheless contend that their claims for injunctive relief must be dismissed as moot because (1) neither Joan Doe nor Jill Doe will attend Rene A. Rost Middle School ("RRMS") after the 2011-2012 school year, and (2) as government defendants, they are entitled to a good faith presumption that the single-sex classes at RRMS will not be reinstated in the future.  These contentions are unavailing.  First, Plaintiffs have moved for leave to file an amended complaint adding three additional plaintiffs who will attend RRMS in the 2012-2013 school year, including two current students at the school who will be entering the seventh grade in the fall of 2011, another student who will enter the fifth grade in the fall of 2012 and will be at RRMS through the 2015-2016 school year, and two parents who have had children in the school since the single-sex classes were instituted in all grades in 2009-2010 and will continue to have children in the school in the future.  Should this motion be granted, Plaintiffs will have continued standing to seek forward-looking injunctive relief, rendering Defendants' arguments moot.

Second, the Fifth Circuit has emphasized that Plaintiffs' claims for injunctive relief will *not* be mooted by Defendants' voluntary cessation of the single-sex classes at RRMS unless "it can be said with assurance that there is *no reasonable expectation*" that the challenged program will be resumed.  *Doe ex rel. Doe v. Vermilion Parish Sch. Bd.*,

1

2011 WL 1290793, at *10 n.5 (5th Cir. Apr. 6, 2011) (emphasis added).  Here, on the

contrary, Vermilion Parish School Board ("VPSB" or the "Board") expressly limited its

decision to suspend the single-sex classes at RRMS to the 2011-2012 school year, and

unequivocally expressed its intention to revisit its decision and consider implementing

single-sex classes at RRMS again as early as the 2012-2013 school year.  Defendants are

not entitled to a presumption that they have permanently abandoned a program that they

have clearly (a) suspended only on a temporary basis and (b) expressed a very strong

preference for reinstating in the future.  Even if such a presumption is afforded, it is

rebutted by ample evidence raising a reasonable expectation that the sex segregation

program will be resumed.  Accordingly, Defendants' motion is without merit and must be

denied.

I.     **STATEMENT OF FACTS**[1]

Beginning in the 2009-2010 school year, RRMS began segregating a substantial

number of students by sex for core curriculum classes in all grades.  *See e.g.,* dkt. entry

no. 1, Compl. ¶ 37.  RRMS continued this practice during the 2010-2011 school year.

*See* dkt. entry no. 119, Defs.' Aug. 31, 2010 letter to District Ct.  In April 2011, RRMS

demonstrated its intent to again segregate students by sex during the 2011-2012 school

year by taking steps to implement the program, such as distributing forms enabling

parents to select sex-segregated classes for their children and hosting informational

---

[1]  Plaintiffs incorporate the statement of facts and procedural background set forth in the Memorandum of Law accompanying their Motion to Amend the Complaint dated July 21, 2011. Dkt. entry no. 137.

meetings for parents of incoming fifth graders and other students about the sex-segregated classes.  Dkt. entry no. 137, Decl. of Megan K. Bannigan in Support of Mot. for Leave to Amend Compl. ("Bannigan Decl."), Ex. B (Unofficial Transcript of the June 2, 2011 VPSB Meeting) [hereinafter "Tr."] at 6.[2]

On June 2, 2011, RRMS Principal David Dupuis presented the VPSB with a PowerPoint presentation including the findings of a student/teacher satisfaction survey he had previously presented to parents at the informational meetings that purported to show a high level of satisfaction with the sex segregated classes and an analysis of disciplinary incidents and academic results.  Bannigan Decl., Ex. A.  The presentation asserted that the sex segregation program had led to positive results and recommended that the program be continued.  *See id.*

Following Dupuis' presentation, however, the school board was informed that, for the 2011-2012 school year, "an insufficient number of students elected single gender classes in grades 5 and 8 to allow for class-size balancing at those grade levels," and was told that this imbalance would likely not past muster with the Court.  Defs.' June 3, 2011 letter to District Ct., attached hereto as Exhibit 1; Tr. at 6-8.  The same member therefore moved that he was "not requesting that voluntary . . . core classes be offered [on a single-sex basis] in school for 2011-2012 school year and that [instead] all classes be taught on a coed basis."  Tr. at 9-10.  The motion was seconded.  *Id.* at 10.  This sparked a discussion among VPSB members on whether RRMS could still implement the single-sex classes

---

[2]  The Court may take judicial notice of these proceedings, as they are matters in the public record.  *See Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995).

for the 2011-2012 school year, in light of the ongoing litigation in this case.  *Id.* at 10-13; *see also id.* at 7-8.

The debate on the motion by VPSB members makes it abundantly clear that the VPSB members were reluctant to drop the single-sex program, and would not have done so but for this litigation.  For instance, one participant stated, "I'm not going to give it up, and if you got to apply to the court to get permission, let's apply to the court to get permission."  *Id.* at 7; *see also id.* at 8 ("I'm not going to give up on it.  I really think you're on to something, and I think we need more data.  And if we got to ask the court to give us more time, show them what we got.  And ask them to let us try again.  I think it's likely to make sense.").  Even after it became clear that the program could not be continued in the 2011-2012 school year because of insufficient parental interest and the Court's continuing oversight, the Board clearly remained in favor of reinstituting the single-sex classes again in the future, possibly as soon as during the 2012-2013 school year.  *See id.* at 11-12.  Counsel explicitly informed Board members that "we can come back next year and request reauthorization;" in response, one Board member stated: "I want the court to know that we're not abandoning this."  *Id.* at 11.

While deliberating on the motion, the Board members specifically contemplated reinstating the program for the 2012-2013 school year, once Jill Doe was no longer an RRMS student.  *See id.* ( "If we don't do it for next year, *can we come back the following year*?) (emphasis added).  Counsel informed the Board that they would be free to do so because, in his view, discontinuing the single-sex program for the 2011-2012 school year "moots the case [because] the plaintiff will be in eighth grade this coming year.  So there

won't be any plaintiffs in the school [in future years]."  *Id.*  The Board considered this to be an important factor in its determination.  *See id.* ("What Woody is saying is important. It moots the current case.  The fact that the plaintiffs will no longer be in school.").

As a result, one board member proposed that VPSB "let students not have a program next year and maybe revisit at a later date.  And let's maybe reorganize in another year and see where we are next year."  *Id.*  Accordingly, a VPSB member modified the motion then on the floor, to "have [only] all coed classes at Rene A. Rost School *for the 2011-2012 school year and then revisit [single-sex classes] for the 2012-2013 school year.*"  *Id.* at 12 (emphasis added).  The VPSB also decided that, in the meantime, a study would be conducted analyzing student performance in single-sex classes during the 2009-2010 and 2010-2011 school years, as well as in the coeducational classes offered for the upcoming 2011-2012 school year.  *Id.*  One speaker explained: "What we want to do is, we're not doing it this year so now we had it for two years, we had statistics before.  We had it for two years.  We want statistics by not having it."  *Id.* at 11; *see also id.* at 12 (comment by unidentified speaker explaining that "in order to have statistics to compare to the two years of single sex, we are voting to have all [coed] core classes for next year, so that we can compare the same data to previous data, *with the hope of maybe revisiting it next year*") (emphasis added).  Another Board member agreed with this proposal and stated that he would write up a resolution to that effect.  *Id.* ("I'll do my best to I write it like he said").  The VPSB unanimously voted to approve this motion.  *See id.* at 12-13.

A written resolution was formulated after the vote directing that "all courses at

RRMS be offered in a co-ed format for the 2011-2012 school year," and that "at the end of the 2011-2012 school year a report be submitted to the Board comparing student performances for the 2009-2010, 2010-2011, and 2011-2012 school years." *See* Defs.' Mot. to Dismiss, Ex. A.  On June 3, 2011, counsel for Defendants notified the Court that the single-sex program at RRMS would be discontinued for the 2011-2012 school year. *See* Ex. 1.  Defendants now move to dismiss Plaintiffs' claims as moot in light of this resolution.

## II.    STANDARD OF REVIEW

Motions to dismiss "'are viewed with disfavor and are rarely granted.'" *Lormand v. U.S. Unwired, Inc.,* 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 570 (5th Cir. 2005)).  "A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)." *Dooley v. Principi*, 250 Fed. Appx. 114, 116 (5th Cir. 2007) (citing *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992)).  In deciding a Rule 12(b)(6) motion to dismiss, courts accept the well-pleaded factual allegations in a complaint as true and view those allegations in the light most favorable to the plaintiff.  *Gonzalez v. Kay,* 577 F.3d 600, 603 (5th Cir. 2009) (citing *Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 338 (5th Cir. 2008)).  A complaint will be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) only if the court lacks the statutory or constitutional power to hear the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the

complaint alone, presuming the allegations to be true, (2) the complaint supplemented by

undisputed facts, or (3) the complaint supplemented by undisputed facts and by the

court's resolution of disputed facts.  *Den Norske Stats Oljeselskap As v. HeereMac Vof*,

241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d

657, 659 (5th Cir. 1996).  Although a court generally cannot go outside the complaint in

determining a motion to dismiss, *see Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d

278, 286 (5th Cir. 2006), a court may rely on "documents incorporated into the complaint

by reference, and matters of which a court may take judicial notice," *Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), including matters of public

record.  *Davis*, 70 F.3d at 372 n.3.


III.    **ARGUMENT**

   A.    **Plaintiffs' Claims are Not Moot Because They Have Live Damages
          Claims, and Because They Seek to Amend The Complaint to Add
          Plaintiffs Who Have Standing to Seek Injunctive Relief**

       Notwithstanding Defendants' concession that a live controversy remains as to

Plaintiffs' damages claims, Defendants now contend that Plaintiffs' "claims" are moot

because neither Joan Doe nor Jill Doe will be a student at RRMS after the 2011-2012

school year.[3]  This argument is meritless.

       As a threshold matter, Plaintiffs' "claims" are in no way mooted simply because

the existing Plaintiffs may lack standing to seek a particular type of relief – namely,

forward-looking injunctive relief.  Plaintiffs do not dispute that neither Jill nor Joan Doe

---

   [3]  Plaintiffs expressly move "for an Order dismissing claims on behalf of the minor child, Jill
Doe, as moot." Defs.' Mot. at 1.  However, their brief argues for dismissal of all claims on behalf
of all plaintiffs, and we address herein the arguments in their brief.

would have standing to seek such relief subsequent to the 2011-2012 school year, or that the temporary suspension of the single-sex program renders such relief unnecessary for the 2011-2012 school year.  However, Plaintiffs have sought declaratory and monetary relief as well as an injunction.  This Court therefore retains jurisdiction both to determine liability and to order payment of damages.  *See, e.g., Powell v. McCormack*, 395 U.S. 486, 495-500 (1969) (holding that mootness of injunctive claims did not render entire case moot because plaintiff had claims for damages and declaratory relief); *Pederson v. La. State Univ.*, 213 F.3d 858, 874-75 (5th Cir. 2000) (holding that although injunctive claims against University were moot as to named plaintiffs who had graduated, "[a] live controversy . . . exists with regard to the damages claim, and the legal questions underlying that claim are not moot").  Defendants' mischaracterizations notwithstanding, Plaintiffs' underlying *claims* survive, and the case is going forward regardless of whether their Motion to Amend the Complaint is granted or whether they may be granted injunctive relief as to future years.

Moreover, Plaintiffs have sought leave to amend the complaint to add new plaintiffs who have standing to seek *all* available remedies, including forward-looking injunctive relief.  *See* dkt. entry no. 137, 1st Am. Compl.  In particular, Plaintiffs seek to add James Washington and Joe Washington, who were students at the school when the sex-segregation was implemented for all grades in 2009-2010 and will both enter seventh grade in the 2011-2012 school year and eighth grade the following year, and Jen Doe, who will enter RRMS in the 2012-2013 school year and will attend through at least the

2015-2016 school year.[4]  *Id.* ¶¶ 9, 12-13.  Plaintiffs also seek leave to add Jane Doe and Jane Washington, who continually have and will have children at RRMS, as Plaintiffs in their own right.  *Id.* ¶¶ 6, 10.

Because Jen Doe and James and Joe Washington expect to attend RRMS in 2012 and beyond and will suffer harm should the sex segregation at RRMS resume, they have standing to seek injunctive as well as declaratory relief.  *See Lee v. Weisman*, 505 U.S. 577, 584 (1992) (although event at issue would occur several years away, plaintiff had standing to bring suit because challenged activity "appear[ed] likely, if not certain" to occur).  The Washingtons, moreover, have standing to seek damages for any past harms they might have already experienced during their time at RRMS.  In addition, parents Jane Doe and Jane Washington, who have had  children in the school continuously since sex-segregation was implemented at RRMS – and will continue to have children at RRMS through at least 2019 – have standing to seek injunctive as well as declaratory relief based on the "interest of parents in the care, custody, and control of their children." *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 288 (5th Cir. 2001)  (internal citations omitted).  For the reasons stated in Plaintiffs' Memorandum in Support of its Motion for Leave to Amend the Complaint, Plaintiffs' Motion to Amend the Complaint adding new plaintiffs should be granted, thus mooting Defendants' argument that there are no live Plaintiffs in the litigation seeking injunctive or other non-monetary relief.

---

[4]     In addition, Plaintiff Jane Doe's youngest daughter will enter RRMS in the 2015-2016 school year and attend RRMS through the 2018-2019 school year.  *See* 1st Am. Compl. ¶ 6.  In the hope that this case will be resolved by 2016, Plaintiffs do not seek leave to add this Doe child as a plaintiff at this time, but will seek leave to do so in the future if necessary.

*See, e.g., Diggs v. Hous. Auth. Of Frederick*, 67 F. Supp. 2d 522, 528-30 (D. Md. 1999) (allowing named plaintiffs whose motion for a preliminary injunction became moot to amend complaint to add new plaintiffs where the court still maintained jurisdiction over the original plaintiffs' damages claims).[5]

    B.      **Defendants' Voluntary Cessation of the Single-Sex Classes for the 2011-2012 School Year Does Not Render the Case Moot**

In remanding the case to this Court, the Fifth Circuit expressly cautioned that the Defendants' voluntary cessation of the single-sex classes at RRMS "would not foreclose forward-looking injunctive relief unless '*it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur.*'" *Doe ex rel. Doe*, 2011 WL 1290793, at *10 n.5 (emphasis added) (quoting *Pederson*, 213 F.3d at 874).

Indeed, a robust body of Fifth Circuit case law makes clear that a defendant asserting this defense bears the "burden of demonstrating that there is no reasonable expectation that the wrong will be repeated." *Pederson*, 213 F.3d at 874 (internal citations omitted); *accord Parents Involved in Comm. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (case not moot "unless subsequent events make it *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur") (emphasis added) (citations omitted); *Resident Council of Allen Parkway Vill. v. U.S. Dep't of Hous. & Urban Dev.*, 980 F.2d 1043, 1048 (5th Cir. 1993) (reiterating

---

[5]    In addition, for the reasons set forth in Plaintiffs' Memorandum of Law in Support of Leave to File an Amended Complaint, the case is not moot because it falls under the "capable of repetition, yet evading review" exception to the mootness doctrine. *See* dkt. entry no. 137; *see also Walsh v. La. High Sch. Athletic Assoc.*, 616 F.2d 152, 157 (5th Cir. 1980) (citation omitted).

"absolutely clear" standard for mootness).  To meet this "heavy" burden, *Pederson*, 213 F.3d at 874, defendants "must offer more than their mere profession that the conduct has ceased and will not be revived."  *Hall v. Bd. of Sch. Comm'rs of Conecuh Cnty.*, 656 F.2d 999, 1001 (5th Cir. 1981).  Defendants' assurances must not be just for the short term; rather, defendants must ensure that the alleged wrongful conduct will not recur "*in the long run*."  *Pederson*, 213 F.3d at 874 (emphasis added).  Otherwise, defendants would be permitted to temporarily cease a challenged activity in response to litigation, then, "without court compulsion . . . legally return to its former ways" once the case is dismissed.  *See K.P. v. LeBlanc*, 627 F.3d 115, 121 (5th Cir. 2010); *accord Parents Involved in Comm. Sch.*, 551 U.S. at 719.

Defendants do not even attempt to demonstrate that there is "no reasonable expectation" that single-sex classes will resume at RRMS after the 2011-2012 school year.  Instead, they contend that, because VPSB is "a government defendant, [it] is entitled to a presumption that this action was taken in good faith and that there is no reasonable expectation at this time that the challenged single-sex program will be reinstituted anytime in the near future and certainly not within the 2011-2012 school year."  Defs. Mot. to Dismiss at 6.  This misapplies the relevant law in two fundamental ways.  First, any presumption should only extend as far as what the defendants have actually promised to do – and no further.  *See, e.g., LeBlanc*, 627 F.3d at 121 (case not moot where defendant reserved right to resume challenged practice).  Plaintiffs accept that Defendants intend in good faith to suspend the program for the 2011-2012 school year.  But, both the text of the resolution voted upon by the VPSB and the debate

11

surrounding its enactment leave no doubt that the suspension of the program was *temporary* and that and that the Board has every intention of revisiting that decision as early as 2012-2013.  Second, any presumption of good faith is *rebuttable*, and a finding of mootness thus is warranted only when there is no evidence to contradict the belief that a defendant will refrain from engaging in the challenged conduct in the future.  *See Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (although Government actors may be "accorded a presumption of good faith because they are public servants, not self-interested private parties," when there is "evidence to the contrary" such a presumption is not warranted); *see also Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1283 (11th Cir. 2004) (government defendants are entitled to "a *rebuttable* presumption that the objectionable behavior will *not* recur") (emphasis in original).  Therefore, whether or not Defendants are accorded a presumption of good faith, their motion must ultimately fail because Defendants are unable to demonstrate that it is "absolutely clear" that single-sex classes will not be instituted again in the future.

In seeking the presumption of good faith, Defendants ask this Court to ignore incontrovertible evidence raising a reasonable expectation that the program will be resumed.  It is apparent that at the outset of the June 2, 2011 Board meeting, the Board had no desire to abandon the sex segregation at RRMS; on the contrary, they thought the sex segregation program was a success and fully expected that it would be continued, as the Dupuis PowerPoint presentation recommended.  *See* Bannigan Decl., Ex. A.; Tr. at 1-6.  The sole reason given for the motion to temporarily suspend it was that an insufficient number of parents had chosen to enroll their children in the single-sex classes in the fifth

12

and eighth grades, and the resulting imbalance in class size between the single-sex and coeducational classes would not satisfy Judge Haik's order that the class sizes be equal. Tr. at 7-13.

Indeed, the original motion simply to not offer single-sex classes for 2011-2012 and to teach all classes on a coed basis met with stiff resistance from Board members. *See, e.g., id.* at 7 ("I'm not going to give it up, and if you got to apply to the court to get permission, let's apply to the court to get permission."); *id.* at 8 ("I'm not going to give up on it.  I really think you're on to something"); *id.* at 11 ("If we don't do it for next year, can we come back the following year?); *id.* ("I want the court to know that we're not abandoning this.").  Accordingly, a Board member modified the motion to make it explicit that VPSB plans to "revisit" its decision in 2012.  *Id.* (proposing that VPSB "let students not have a program next year *and maybe revisit at a later date.  And let's maybe reorganize in another year and see where we are next year*") (emphasis added); *id*. at 12 (motion to "have all coed classes at Rene A. Rost School for the 2011-2012 school year *and then revisit it for the 2012-2013 school year*") (emphasis added).

The written resolution that was formulated after the Board vote omits reference to the Board's intention – as reflected in the proposal it *actually* voted on – to "revisit" the sex segregation program in 2012.  However, it includes a direction "that at the end of the 2011-2012 school year a report be submitted to the Board, comparing student performances for the 2009-2010, 2010-2011, and 2011-2012 school years"; the surrounding debate makes clear that the purpose of that report is to evaluate the data for purposes of considering resumption of the sex segregation program in 2012-2013.  *Id.*  As

one speaker explained:  "I want the court to know that we're not abandoning this.  What we want to do is, we're not doing it this year so now we had it for two years, we had statistics before.  We had it for two years.  We want statistics by not having it."  *Id.* at 11.  Lest there be any doubt, this same member requested (presumably of Counsel), "Will you let the court know that this is what we're doing and why we're doing it? [Inaudible] That's what I want to do."  *Id.*; *see also id.* at 12 (comment by unidentified speaker explaining that "in order to have statistics to compare to the two years of single sex, we are voting to have all [coed] core classes for next year, so that we can compare the same data to previous data, *with the hope of maybe revisiting it next year*") (emphasis added).  There is thus strong evidence that VPSB not only viewed the suspension of the program as temporary, but also that it specifically contemplated reinstituting the program as early as the 2012-2013 school year.

　　　　The good faith presumption sometimes accorded to government defendants that they will not resume a challenged activity should not be permitted to defeat a plaintiff's claims when the "cessation" is so transparently temporary.  Under such circumstances, courts have routinely rejected mootness arguments.  *See Parents Involved*, 551 U.S. at 719 (2007) (parents' race discrimination suit against school was not moot despite school's cessation of assigning students based on race); *City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 & n.11 (1982) (rejecting defendant's argument that challenge to a municipal statute was moot; even though it had been repealed, there was "no certainty" that the law would not be reenacted, especially when the City had announced its intent to reenact it if the Court dismissed the case); *LeBlanc*, 627 F.3d at 120 (challenge to state

malpractice insurance fund's refusal to cover certain procedures not moot where fund

agreed "to review the merits of [plaintiff's] action but reserved the right to refuse

payment if the [fund] later determined that . . . procedures were not covered").

Moreover, government entities are not entitled to the presumption when voluntary

cessation is undertaken as "mere litigation posturing." *Sossamon*, 560 F.3d at 325

("Without evidence to the contrary, we assume that formally announced changes to the

governmental policy are not mere litigation posturing.").  Here, the transcript suggests

that VPSB's vote to suspend the program was motivated, at least in part, by a desire to

moot plaintiffs' claims for injunctive relief.  For example, when one of the Board

members requested guidance on whether they might reinstate the program for the 2012-

2013 school year, Counsel informed the Board that they would be free to do so because,

in his view, discontinuing the single-sex program for the 2011-2012 school year "moots

the case [because] the plaintiff will be in eighth grade this coming year.  So there won't

be any plaintiffs in the school [in future years]."  Tr. at 11.  There is evidence that this

advice was an important factor in the Board's decision.  *See id.* ("What Woody is saying

is important.  It moots the current case.  The fact that the plaintiffs will no longer be in

school.").  The VPSB cannot claim they genuinely intend to permanently cease offering

single-sex classes, when they knowingly and intentionally passed a resolution to revisit it

for the 2012-2013 school year specifically because they were advised that the plaintiff in

this litigation will have graduated by then.  *See Pederson*, 213 F.3d at 874-75 (rejecting

mootness argument where defendants had "given no assurance" that they would not

disband programs pursuant to court-ordered compliance plan, when they had done so in

the past).  That VPSB colloquy seriously undermines Defendants' claim of a "good faith" intention not to resume the sex segregation program subsequent to the 2011-2012 school year.

The cases cited by Defendants are not to the contrary.  In sharp contrast with the facts presented here, in those cases the relevant changes in policies were not at the same time accompanied by an express preference to reinstate the challenged policy down the road.  For instance, the plaintiff in *Sossamon* challenged a cell restriction policy that prevented Texas prison inmates from attending religious services.  *See* 560 F.3d at 321. The court was not presented with any evidence to rebut the state prison's good faith presumption; instead, the evidence demonstrated that a "state-wide" change in policy "obviate[d] any concern that local . . . officials might change their minds on a whim."  *Id.* at 325; *accord DeMoss v. Crain*, 636 F.3d 145, 150-51 (5th Cir. 2011) (same, involving an "identical challenge to the cell restriction policy"); *see also Troiano*, 382 F.3d at 1284 (emphasizing that a defendant's claim of mootness will be rejected when "there is a substantial likelihood that the offending policy will be reinstated if the suit is terminated").  In addition, *Zepeda v. Boerne Ind. Sch. Dist.*, 294 Fed. Appx. 834 (5th Cir. 2008), also relied on by Defendants, is inapposite.  In that case, the Fifth Circuit affirmed the district court's dismissal of a plaintiff's suit to challenge her nephew's admission to a school because, ultimately, he was not denied admission.  *See id.* at 835-37.  The court analyzed that case on ripeness grounds, but noted in dicta in a footnote that "courts generally treat voluntary cessation of purportedly unlawful conduct by government officials with greater solitude than similar action by private parties" and "such self-

16

correction provides a secure foundation for a dismissal based on mootness so long as it *appears genuine*." *See id.* at 840 n.9 (emphasis added) (citations omitted).  By contrast, the weight of evidence in this case gives rise to more than a reasonable expectation that the challenged conduct will resume, and firmly rebuts any presumption of good faith that Defendants might be afforded.

IV.    **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss dated July 21, 2011 should be denied.

Dated:           August 22, 2011

Respectfully submitted,

DEBEVOISE & PLIMPTON LLP

By: /s/ Mark Friedman
     Mark Friedman
     mwfriedm@debevoise.com
     (Admitted *pro hac vice*)

919 Third Avenue
New York, New York 10022
(212) 909-6000

/s/ Lenora M. Lapidus
Lenora M. Lapidus
Amy L. Katz
Galen Sherwin
(Admitted *pro hac vice*)
WOMEN'S RIGHTS PROJECT
AMERICAN CIVIL LIBERTIES UNION FDN
125 Broad Street, 18th Floor
New York, New York 10004
llapidus@aclu.org

(212) 549-2668

Ronald Wilson (#13575)
*On Behalf of*
AMERICAN CIVIL LIBERTIES UNION
OF LOUISIANA
701 Poydres St. Ste. 2556
New Orleans, LA 70139
(504) 525-4361
cabral2@aol.com

*Attorneys for Plaintiffs*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on August 22, 2011, Plaintiffs' Opposition to

Defendants' Motion to Dismiss was filed electronically with the Clerk of Court through

the CM/ECF system, and was uploaded to the CM/ECF system which will send an e-

notice of electronic filing to the following:

> Calvin "Woody" Woodruff, Jr.
> P.O. Box 520
> Abbeville, LA 70511-0520
> Attorney for Defendants

> Dawn L. Morris
> Law Office of Dawn L. Morris, LLC
> 1106 Coolidge Blvd, Suite A
> Lafayette, La 70503
> Attorney for Defendants

Dated:          New York, New York
                August 22, 2011

                          DEBEVOISE & PLIMPTON LLP


                          By: /s/ Mark Friedman
                                Mark Friedman
                                mwfriedm@debevoise.com
                                (Admitted *pro hac vice*)

                          919 Third Avenue
                          New York, New York 10022
                          (212) 909-6000

                          Lenora M. Lapidus
                          Amy L. Katz
                          Galen Sherwin

(Admitted *pro hac vice*)
WOMEN'S RIGHTS PROJECT
AMERICAN CIVIL LIBERTIES UNION FDN
125 Broad Street, 18th Floor
New York, New York 10004
llapidus@aclu.org
(212) 549-2668

Ronald Wilson (#13575)
*On Behalf of*
AMERICAN CIVIL LIBERTIES UNION
OF LOUISIANA
701 Poydres St. Ste. 2556
New Orleans, LA 70139
(504) 525-4361
cabral2@aol.com

*Attorneys for Plaintiffs*